UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-CR-159 (RBW) |
| v. : | |
| : | |
| CHRISTIAN ALFONSO, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Christian Alfonso has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Alfonso to 60 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.     Introduction

Defendant Christian Alfonso, a 32-year-old a former casino employee from Galloway Township, New Jersey participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College

1

vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Alfonso pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by Alfonso's: (1) observation of chaos on the Capitol grounds before entering the Capitol building; (2) entering the office suite assigned to the Speaker of the House (Nancy Pelosi's Office); (3) posting photos and videos of his travels throughout the Capitol building on his social media accounts; (4) lying about his conduct to the FBI; and (5) being arrested while on pretrial release in this case.

The Court must also consider that Alfonso's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Alfonso's crime support a sentence of 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

**II.     Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 35 at 1-4.

*Defendant Alfonso's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Alfonso traveled from his home in Galloway Township, New Jersey to Washington D.C. to attend the "Stop the Steal" rally. When he arrived in D.C., Alfonso followed the crowd to the U.S. Capitol where he participated in the riot there.

On January 6, Alfonso posted videos and photos of the Capitol building and grounds on his Instagram account. Alfonso traveled to the West side of the building, where he observed police officers attempting to prevent rioters from climbing the steps to the Upper West Terrace. Before he entered the building, Alfonso filmed police officers attempting to keep rioters away from the building and deploying tools to do so. He posted the picture on his Instagram account with a caption to the photo stating "No violence here." *See* Image 1.



*Image 1 – Photo posted on Alfonso's Instagram account on the Capitol Grounds*

Ignoring blaring alarms and chaos, at approximately 2:23 p.m., Alfonso entered the U.S. Capitol building through the Senate Wing Doors, as other rioters climbed in through broken windows adjacent to him. *See* Image 2 and Exhibit 2[2].



*Image 2 – Still Image from CCTV footage of Alfonso (circled in red) entering the Capitol through the Senate Wing Doors at approximately 2:23 p.m (Exhibit 2 from 00:00 to 00:25)*

After entering the Capitol, Alfonso traveled to the Crypt, where he joined the mob of rioters facing off against a small group of police officers, who were attempting to prevent the rioters from moving past them to the House side of the Capitol. *See* Image 3. While in the mob, Alfonso joined in various chants, including "U.S.A., U.S.A." Once officers retreated, Alfonso followed the mob further into the building.

---

[2] Attached as Government's Exhibit 2 is CCTV footage of Alfonso entering the Capitol at approximately 2:23 p.m. through the Senate Wing Doors.



*Image 3 – Still Image from YouTube of Alfonso inside the crypt, filming the scene and chanting[3]*

Alfonso also made his way to the Speaker of the House's Officer (Nancy Pelosi's Office) and filmed his approach to her office. *See* Image 4 and Exhibit 4[4]. Alfonso then entered the office and left shortly after. *See* Image 5.



*Image 4 – Still Image from Alfonso's Instagram Account Near Nancy Pelosi's Office (Exhibit 4)*

---

[3] This still image is from a publicly available YouTube video at approximately 27:09 (youtube.com/watch?v=_E-6bRNfx2c).

[4] Exhibit 4 is the Instagram video on Alfonso's account from which Image 4 derives from.



*Image 5 – Open-source photo of Alfonso (circled in green) inside the Office of the Speaker of the House*

As he traveled throughout the Capitol building, Alfonso continued to recorded his travels on his phone, including taking video of the Memorial Door. Alfonso was near the Memorial Door minutes after officers had to retreat due to rioters pushing their way forward. *See* Image 6.



*Image 6 – Still Image from CCTV of Alfonso near the Memorial Door*

At approximately 2:36 p.m., Alfonso exited the Capitol building through the Memorial Door. *See* Image 7.



*Image 7 – Still image from CCTV of Alfonso exiting the U.S. Capitol Building through the Memorial Door at approximately 2:36 p.m.*

On January 6, 2021, Alfonso messaged another rioter, Lawrence Stackhouse, saying he had a "BLAST," referring to his time in D.C., and indicated that "we didn't loot or damage anything so idk wtf this guy is on." *See* Image 8.[5]

> From \*\*\*-\*\*\*-2118 To Stackhouse January 5, 2021 at 6:36:20 PM (UTC-5)
> Yo brotha! Its Chris host from HQ, [name redacted] told me you were going to be in Washington tomorrow. I'm leaving at 4am and trying to figure out what's the best place to park or street to be on
>
> From \*\*\*-\*\*\*-2118 To Stackhouse January 6, 2021 at 6:26:39 AM (UTC-5)
> I'm wearing a denim jacket and black jeans if he can't find me in the lobby
>
> From \*\*\*-\*\*\*-2118 To Stackhouse January 6, 2021 at 3:33:19 PM (UTC-5)
> Yo I just took my Uber back to the place I had a BLAST
>
> From \*\*\*-\*\*\*-2118 To Stackhouse January 6, 2021 7:30:36 PM (UTC-5)
> We didn't loot or damage anything so idk wtf this guy is on

*Image 8 – Image of Text Messages Between Alfonso and Stackhouse*

*Alfonso's Interview with the FBI*

On January 11, 2021, the FBI interviewed Alfonso regarding his conduct on January 6. During the interview, Alfonso told the FBI that he did not enter the Capitol building. When the FBI confronted him with photos and videos he posted to his Instagram account depicting the inside

---

[5] The full phone number in Image 8 was redacted for the purpose of this public filing. During an interview with the FBI, Alfonso informed the FBI that his phone number was the same number ending in 2118.

of the Capitol building, Alfonso lied again and told them that while he had posted those photos and videos, they were from other sources, he did not personally take them. But upon further review of Capitol Surveillance footage, the FBI determined that Alfonso entered the Capitol building and filmed events during his time inside.

*The Charges and Plea Agreement*

On March 29, 2024, the United States charged Alfonso by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2)(G). On September 20, 2024, pursuant to a plea agreement, Alfonso pleaded guilty to the § 5104 counts. By plea agreement, Alfonso agreed to pay $500 in restitution to the Architect of the Capitol.

**III.   Statutory Penalties**

Alfonso now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Alfonso faces up to six months of imprisonment and a fine of up to $5,000. Alfonso must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of a sentence of 60 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Alfonso's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Alfonso, the absence of violent or destructive acts is not a mitigating factor. Had Alfonso engaged in such conduct, he would have faced additional criminal charges.

The most aggravating factor in this case is his awareness of chaos and his choice to enter the building, including a sensitive area within the Capitol building. Alfonso saw officers attempting to keep rioters back, but instead of leaving he continued to go inside the building. Once he was inside the building, he went inside Nancy Pelosi's office and continued to film his travels throughout the building until he exited. After January 6, Alfonso texted another rioter and posted this content on his social media. When confronted by the FBI, he lied about being inside the building and filming. Further explained below, in 2024 after being released on conditions in this instant case, he was arrested for driving under the influence. This shows not only his lack of respect for the law, but of this Court and its orders. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 60 days' incarceration in this matter.

### B. Alfonso's History and Characteristics

As set forth in the PSR, Alfonso has a criminal history and was convicted in June 2016 and for driving under the influence. ECF No. 42 at ¶¶ 25, 30. While under pretrial supervision for this

9

case, Alfonso was arrested and charged with Operating Under the Influence of Liquor or Drug, Assault by Auto/Vessel and related charges. *Id.* at ¶ 7. The PSR indicates that the defendant has a substance abuse issue and currently in outpatient treatment. *Id.* at ¶ 44. Although Alfonso is seeking treatment, his arrests for driving under the influence demonstrate a blatant disregard for the law and other people, as his actions put other motorists at risk. Prior to January 6, Alfonso graduated from Stockton University with a bachelor's degree in Criminal Justice. *Id.* at ¶ 46. Alfonso's educational background demonstrates that, on January 6, he had at least some knowledge of the law but still chose to ignore it, join a mob that pushed past police and storm the Capitol.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Alfonso's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Alfonso did not accept the results of the 2020 presidential election, so on January 6 he went to Washington D.C. invaded the Capitol, took videos, posted online, and lied about it later. His conduct on January 6 shows that he saw the chaos and violence, chose to join it, and disregarded the safety and well-being of the officers trying to defend the Capitol. Alfonso's actions on January 6 makes it clear that a sentence involving incarceration is needed to successfully deter Alfonso from such thoughtless behavior in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[6] This Court must sentence Alfonso based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Alfonso has pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Senate Floor or a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That

---

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

In *United States v. Robert Lyon*, 21-cr-161 (RBW), this court sentenced the defendant to 20 days' imprisonment. Similar to Alfonso, the defendant saw violence before entering the Capitol and went inside a sensitive area of the Capitol (a Senator's Conference Room), lied to the FBI about entering the building, sent messages about his conduct after January 6, and indicated that he saw chaos at the Capitol and knew it was wrong to enter. Alfonso's criminal history and arrest while on pretrial release presents an aggravating factor warranting a lengthier sentence.

In *United States v. Brent Holdridge*, 21-cr-729 (RBW), the defendant observed officers in full riot gear and he knew that he was not supposed to be on the Capitol grounds. While Holdridge only spent five minutes in the Capitol building, he entered a sensitive area—the Parliamentarian's Office—and sat down in a desk chair there before leaving. The court sentenced the defendant to 60 days' imprisonment noting that Holdridge had an extensive criminal history. While Alfonso does not appear to have sat in a chair in Pelosi's office, he was located in a sensitive area, spent more time inside the building (approximately 20 minutes), lied to the FBI about his conduct and has some criminal history. Alfonso's conduct therefore warrants a similar sentence of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize

13

and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[7] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Alfonso must pay $500 in restitution, which reflects in part the

---

[7] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

14

role Alfonso played in the riot on January 6.[8] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Alfonso's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 85.

## VI. Fine

Alfonso's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (2)(G) subject him to a statutory maximum fine of $5000. S*ee* 18 U.S.C. § 3571(b). *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR ¶ 57.

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Alfonso to 60 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in

---

[8] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Alfonso's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

                      Respectfully submitted,

                      MATTHEW M. GRAVES
                      United States Attorney
                      D.C. Bar No. 481052

BY:    */s/ Nialah S. Ferrer*
                      Nialah S. Ferrer
                      Assistant United States Attorney
                      New York Bar No. 5748462
                      601 D Street, NW
                      Washington, D.C. 20530
                      (202) 557-1490
                      Nialah.Ferrer@usdoj.gov